**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-60493-BLOOM/Valle**

WHIRLPOOL CORPORATION,
WHIRLPOOL PROPERTIES, INC.,
and MAYTAG PROPERTIES, LLC,

      Plaintiffs,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.
_____/

**SEALED ORDER GRANTING PLAINTIFFS'** ***EX PARTE*** **APPLICATION**
**FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND**
**SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** is before the Court upon Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "Application for Temporary Restraining Order"), ECF No. [6]. The Court has carefully considered the Application for Temporary Restraining Order, the record in this case, and the applicable law, and is otherwise fully advised.

By the instant Application, Plaintiffs, Whirlpool Corporation, Whirlpool Properties, Inc., and Maytag Properties, LLC (collectively "Plaintiffs"), move, *ex parte*, pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 and The All Writs Act, 28 U.S.C. § 1651(a), for entry of a temporary restraining order and an order restraining the financial accounts used by Defendants,[1] and upon expiration of the temporary restraining order, a preliminary injunction

---

[1] Defendants are the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants").

against Defendants, for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). Because Plaintiffs have satisfied the requirements for the issuance of a temporary restraining order, the Court grants Plaintiffs' Application for Temporary Restraining Order.

## I. FACTUAL BACKGROUND[2]

Plaintiff, Whirlpool Properties, Inc., is the owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Whirlpool Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| KITCHENAID | 2,520,284 | December 18, 2001 | IC 037 – installation, repair and maintenance of hand and stand electric beating and mixing machines, coffee making machines, toasters, food processors, blenders, clothes washing and drying machines, dishwashers, refrigerators, freezers, combination refrigerator/freezers, ranges, ovens and surface units, microwave ovens, cooktops, exhaust hoods, ventilating fans, air conditioners, dehumidifiers, wine cellars, water supply units for dispensing cold water and ice from refrigerators, food waste disposers, food waste and trash compactors, ice makers, electrically operated hot water dispensers, and compressors for refrigerators. |
| KitchenAid | 2,520,285 | December 18, 2001 | IC 037 – installation, repair and maintenance of hand and stand electric beating and mixing machines, coffee making machines, |

---

[2] The factual background is taken from Plaintiffs' Complaint, ECF No. [1], Plaintiffs' Application for Temporary Restraining Order, ECF No. [6], and supporting evidentiary submissions. Plaintiffs filed declarations and exhibits annexed thereto in support of their Application for Temporary Restraining Order. The declarations are available in the docket at the following entries: Declaration of Patrick Hall, ECF No. [6-1], Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [6-2], and Declaration of Kathleen Burns, ECF No. [6-3].

| | | | |
|---|---|---|---|
| | | | toasters, food processors, blenders, clothes washing and drying machines, dishwashers, refrigerators, freezers, combination refrigerator/freezers, ranges, ovens and surface units, microwave ovens, cooktops, exhaust hoods, ventilating fans, air conditioners, dehumidifiers, wine cellars, water supply units for dispensing cold water and ice from refrigerators, food waste disposers, food waste and trash compactors, ice makers, electrically operated hot water dispensers, and compressors for refrigerators. |
| WHIRLPOOL | 4,983,312 | June 21, 2016 | IC 011 – water filtration and purification units and replacement cartridges and filters therefor for refrigerators. |
| EVERYDROP | 5,232,741 | June 27, 2017 | IC 011 – refrigerator water filters; water filtration pitchers sold empty and portable water filter bottles sold empty. |
| Whirlpool | 5,921,312 | November 26, 2019 | IC 011 – heating, cooling and ventilating apparatus, namely, furnaces, gas water heaters, conversion burners, heat pumps, air conditioning units, condensing units, evaporator units, evaporator coils, central humidifiers, central air cleaners, furnace boilers and heat exchangers; Clothes drying machines; Refrigerators, freezers, combination refrigerator-freezers; Water softening apparatus and installations, air conditioners, dehumidifiers, cooking ovens, cooking ranges, gas and electric cooktops, microwave ovens for cooking and range exhaust hoods; Freezer chests; Water purification and delivery systems comprising standalone water cabinets; Built-in bottled water dispensing apparatus for hot or chilled water; Domestic water filtration units; Reverse |

|  |  |  | osmosis units for purification of water; Appliances for domestic and commercial use, namely, combination garment wrinkle and odor remover and garment dryer; Apparatus and appliances for domestic use, namely, air purifying units, air filters; Gas and electric water heaters; Water conditioning units, water softening apparatus and installations, water coolers, water chillers, countertop water filtration devices, home water filtration devices and water faucet filters; Refrigerator water filters. |
|---|---|---|---|

*See* Declaration of Patrick Hall, ECF No. [6-1] at 6; ECF No. [1-2] (containing Certificates of Registrations for the Whirlpool Marks at issue). The Whirlpool Marks are used in connection with the manufacture and distribution of quality goods in the categories identified above. *See* Declaration of Patrick Hall, ECF No. [6-1] at 6.

Plaintiff, Maytag Properties, LLC, is the owner of the following trademark which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Maytag Mark"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| MAYTAG | 5,777,058 | June 11, 2019 | IC 011 – water treatment equipment, namely, water filtration units and reverse osmosis units; water softening apparatus and installations; water purification and filtration apparatus and replacement cartridges and filters therefor. |

*See* Declaration of Patrick Hall, ECF No. [6-1] at 13; ECF No. [1-3] (containing Certificate of Registration for the Maytag Mark at issue). The Maytag Mark is used in connection with the

4

manufacture and distribution of quality goods in the category identified above. *See* Declaration of Patrick Hall, ECF No. [6-1] at 13.

Defendants, by operating Internet based e-commerce stores under Defendants' respective seller identification names identified on Schedule "A" hereto (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiffs have determined to be counterfeits, infringements, reproductions or colorable imitations of the Whirlpool Marks and/or Maytag Mark (collectively, "Plaintiffs' Marks"). *See* Declaration of Patrick Hall, ECF No. [6-1] at 20-24; Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [6-2] at 2; Declaration of Kathleen Burns, ECF No. [6-3] at 4-7.

Although each Defendant may not copy and infringe each of Plaintiffs' Marks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of Plaintiffs' Marks. *See* Declaration of Patrick Hall, ECF No. [6-1] at 20-24. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of Plaintiffs' Marks. *See* Declaration of Patrick Hall, ECF No. [6-1] at 11, 18, 23-24.

Counsel for Plaintiffs retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiffs' branded products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiffs' branded products. *See* Declaration of Patrick Hall, ECF No. [6-1] at 21; Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [6-2] at 2; Declaration of Kathleen Burns, ECF No. [6-3] at 3. Invisible accessed the Internet based e-commerce stores operating under the Seller IDs and placed orders from each

5

Defendant for the purchase of various products, all bearing[3] counterfeits of, at least, one of Plaintiffs' trademarks at issue in this action, and requested each product to be shipped to Invisible's address in the Southern District of Florida. *See* Declaration of Kathleen Burns, ECF No. [6-3] at 4. Each order was processed entirely online, and following the submission of the orders, Invisible finalized payment for the various products ordered via Defendants' respective payment accounts[4] and/or payee,[5] which are identified on Schedule "A" hereto. *See id.* Based upon the shipping origin information, most of the packages utilized and/or originated from a domestic fulfillment center, e-commerce shipping partner, warehouse, and/or storage facility during the shipping process. *See* Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [6-2] at 2. The goods bearing at least one of Plaintiffs' Marks that were purchased and received[6] by Invisible from Defendants via their

---

[3] Certain Defendants blurred-out and/or physically altered the images of Plaintiffs' Marks on the product being offered for sale via its e-commerce store. The product Invisible received from these Defendants bears Plaintiffs' Marks in their entirety. *See* Declaration of Kathleen Burns, ECF No. [6-3] at 4 n.1.

[4] Defendant Numbers 1-17, 19-24, 26-41, 43-44, and 46-64 operate via the non-party Internet marketplace platform eBay.com, and use money transfer and retention services with PayPal, Inc. ("PayPal"). *See* Declaration of Kathleen Burns, ECF No. [6-3] at 4 n.3; Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [6-2] at 4.

[5] Defendant Numbers 18 and 45 operate via the non-party Internet marketplace platform, AliExpress.com, and have their payments processed on their behalf using Alipay. Additionally, Defendant Number 45 has its payments processed on its behalf using PayPal, identifying the payee Alipay Singapore E-Commerce, which is the aggregate PayPal account for purchases made via PayPal on AliExpress.com. Defendant Numbers 25 and 42 operate via the non-party e-commerce marketplace platform, Wish.com ("Wish"), which is operated by ContextLogic Inc. ("ContextLogic"). The payee for the orders placed on Wish.com identifies "PayPal *Wish," which is the aggregate PayPal account for purchases made via Wish.com. As such, Defendants' payment information is not publicly disclosed. However, because these financial entities accept and/or process payments on behalf of the individual merchants operating on their respective platforms, the financial entities can tie a particular Seller ID, merchant identification number, and/or store number to a reported transaction and identify the merchant's funds held in sub-accounts within their respective account. *See* Declaration of Kathleen Burns, ECF No. [6-3] at 4 n.3; Declaration of T. Raquel Wiborg-Rodriguez, ECF No. [6-2] at 5-6.

[6] Invisible has yet to receive the product it purchased from Defendant Number 64's alias Seller ID, hawhi_50. *See* Declaration of Kathleen Burns, ECF No. [6-3] at 4 n.4.

Seller IDs were transmitted to Plaintiffs' representative for analysis, together with an appropriate Chain of Custody. *See* Declaration of Patrick Hall, ECF No. [6-1] at 22; Declaration of Kathleen Burns, ECF No. [6-3] at 5.

Plaintiffs' representative reviewed and visually inspected the goods[7] Invisible purchased and received from Defendants through Internet based e-commerce stores operating under their respective Sellers IDs, and determined the products were not genuine versions of Plaintiffs' goods. *See* Declaration of Patrick Hall, ECF No. [6-1] at 23-24.

## II. LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*

---

[7] Plaintiffs' representative reviewed the detailed web page captures of the product purchased from the e-commerce store operating under the Seller ID, hawhi_50. Declaration of Patrick Hall, ECF No. [6-1] at 23 n.1.

*& Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974).

## III. ANALYSIS

The declarations Plaintiffs submitted in support of their Application for Temporary Restraining Order support the following conclusions of law:

    A.    Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sales, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of Plaintiffs' Marks, and that the products Defendants are selling and promoting for sale are copies of Plaintiffs' products that bear copies of Plaintiffs' Marks;

    B.    Because of the infringement of Plaintiffs' Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. It clearly appears from the following specific facts, as set forth in Plaintiffs' Complaint, Application for Temporary Restraining Order, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers before Defendants can be heard in opposition unless Plaintiffs' request for *ex parte* relief is granted:

        1.    Defendants own or control Internet based e-commerce stores operating under their Seller IDs which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiffs' rights;

        2.    There is good cause to believe that more counterfeit and infringing products bearing Plaintiffs' trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products; and

3. There is good cause to believe that if Plaintiffs proceed on notice to the Defendants of this Application for Temporary Restraining Order, Defendants can easily and quickly change the ownership or modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, thereby thwarting Plaintiffs' ability to obtain meaningful relief.

C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiffs, their respective reputations, and their goodwill as manufacturers and distributors of quality products, if such relief is not issued.

D. The public interest favors issuance of the temporary restraining order to protect Plaintiffs' trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiffs' genuine goods.

E. Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of Plaintiffs' Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.,* 51 F.3d at 987 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)); and

G.  In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Application for Temporary Restraining Order, **ECF No. [6],** is **GRANTED** as follows:

(1)  Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained:

> a.  From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using Plaintiffs' Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiffs; and
>
> b.  From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing and/or using Plaintiffs' Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using Plaintiffs' Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

(2)  Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of Plaintiffs' Marks or any confusingly similar trademarks, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs;

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of Plaintiffs' Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs;

(4) Each Defendant shall not transfer ownership of the Internet based e-commerce stores operating under their Seller IDs during the pendency of this action, or until further order of the Court;

(5) Each Defendant shall preserve copies of all computer files relating to the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before the entry of this Order;

(6) Upon receipt of notice of this Order, the authorized representative, officer, managing operator and/or administrator for any fulfillment center, e-commerce shipping partner, warehouse, storage facility, and/or marketplace platform shall immediately cease fulfillment of and sequester Defendants' inventory assets bearing Plaintiffs' Marks presently in its inventory, possession, custody, or control, and impound such goods in trust for the Court during the pendency of this action or until further order of the Court;

(7) Upon receipt of notice of this Order, the Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms,

including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd. and Alipay.com Co., Ltd. (collectively, "Alipay"), PayPal, Inc. ("PayPal"), ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), and their related companies and affiliates shall (i) immediately identify and restrain all funds in all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs, store numbers, merchant identification numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other related accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

(8)   Upon receipt of notice of this Order, the Defendants and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, AliExpress, Ant Financial Services, Alipay, PayPal, ContextLogic, and their related companies and affiliates, shall further, within five business days of receiving this Order, provide Plaintiffs' counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. Such restraining of the funds and the disclosure of the related financial institution account information

shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, PayPal, ContextLogic, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

(9) This Order shall remain in effect until the ruling on Plaintiffs' Motion for Preliminary Injunction, or until such further dates as set by the Court or stipulated to by the parties;

(10) This Order shall apply to the Seller IDs, associated e-commerce stores, and any other seller identification names, e-commerce stores, or financial accounts which are being used by Defendants for the purpose of counterfeiting Plaintiffs' Marks at issue in this action and/or unfairly competing with the Plaintiffs;

(11) Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(12) As a matter of law, this Order shall no longer apply to any Defendant or associated e-commerce store dismissed from this action, or as to which Plaintiffs have withdrawn their request for a temporary restraining order;

(13) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

(14) **A hearing is set before this Court on March 18, 2021, at 10:00 a.m. via Zoom videoconference** at which time Defendants or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiffs' requested preliminary injunction. The Zoom hyperlink is https://www.zoomgov.com/j/1613618228?pwd=OWFreEdxV04xUE9rdlFZTkhQRmlkUT09. **Alternatively, the Zoom Meeting ID is 161 361 8228 and the Passcode is 101451.**

(15) After Plaintiffs' counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiffs shall serve a copy of the Complaint, the Application for Temporary Restraining Order and this Order on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller ID, or by providing a copy of this Order by e-mail to the marketplace platforms for each of the Seller IDs so that they, in turn, notify each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court. In addition, Plaintiffs shall post a copy of the Complaint, the Application for Temporary Restraining Order, this Order, and all other documents filed in this action on the website located at http://servingnotice.com/xA14k/index.html[8] and shall provide the address to the website to Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof. Plaintiffs shall continue to provide notice of these proceedings and copies of the documents on file in this matter to the Defendants by regularly updating the website located at http://servingnotice.com/xA14k/index.html, or by other means reasonably calculated to give notice which is permitted by the Court;

---

[8] In this Circuit, Rule 65 has been interpreted to require that a party have notice of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order. *See Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978); *Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366, 1370-71 (N.D. Ga. 2008).

(16)     Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace websites and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to AliExpress, Ant Financial Services, Alipay, PayPal, and ContextLogic, and their related companies and affiliates shall, at Plaintiffs' request, provide Plaintiffs' counsel with any e-mail address known to be associated with the Defendants' respective Seller ID;

(17)     **Any response or opposition** to Plaintiffs' Motion for Preliminary Injunction must be filed and served on Plaintiffs' counsel forty-eight (48) hours prior to the hearing set for **March 18, 2021, at 10:00 a.m.,** and filed with the Court, along with Proof of Service. Plaintiffs shall file any **Reply Memorandum** twenty-four (24) hours prior to the hearing set for **March 18, 2021, at 10:00 a.m.** The above dates may be revised upon stipulation by all parties and approval of this Court. **Defendants are on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), The All Writs Act, 28 U.S.C. § 1651(a), Federal Rule of Civil Procedure 65, and this Court's inherent authority.**

The Clerk of Court shall file this Order under seal until further order of the Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 4, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Case No. 21-cv-60493-BLOOM/Valle

Copies to:

Counsel of Record

16

Case No. 21-cv-60493-BLOOM/Valle

## SCHEDULE A:
## DEFENDANTS BY NUMBER, SELLER ID, AND
## RESPECTIVE FINANCIAL ACCOUNT

| Def. No. | Defendant / Seller ID | Financial Account Information / Store Number | Infringing Product Number |
|---|---|---|---|
| 1 | criquin_12 | labrindle@outlook.com | |
| 2 | kathphe_76 | ecolbrea@yahoo.com | |
| 3 | daabra_2441 | davidabramson684@yahoo.com | |
| 4 | dress37 | dresstangs@gmail.com | |
| 5 | riclan83 | richardlandon914@yahoo.com | |
| 6 | voya817 | voyaberg@gmail.com | |
| 7 | wows_5863 | wowsherd@gmail.com | |
| 8 | dakok97 | Maxips@yahoo.com | |
| 9 | deadega0 | Pattygrinder@hotmail.com | |
| 10 | keengel2345 | Marcsflea@gmail.com | |
| 11 | prin-9599 | prinhera@yahoo.com | |
| 12 | shun_6873 | Shunsurt@hotmail.com | |
| 13 | wellg_79 | Geheidbdidhe10@gmail.com | |
| 14 | aunwic0 | gambitesco@yahoo.com | |
| 15 | smart-5331 | smarttleysd@gmail.com | |
| 16 | mabla1047 | mariablanco232@aol.com | |
| 17 | lab-271 | Wschensn7neng@hotmail.com | |
| 18 | Shop5257090 Store | 5257090 | 4000174902263 |
| 19 | 97k-cube | pp.xjh8@hotmail.com | |
| 20 | trabroth_23 | kulonembong1@gmail.com | |
| 21 | 518chakesi | dong1994yi@outlook.com | |
| 22 | huayunjiaoyu | juleidy4107@163.com | |
| 23 | irenestor65 | Mrdaih68hao@hotmail.com | |
| 24 | danigo-4392 | chengweiqi2020@163.com | |
| 25 | zhumeiling | 5a7c04af417cee603ac99bd2 | 5e8588a7093e6b10c129bc08 |
| 26 | aleeya_19 | Thfan7aj8wu9@hotmail.com | |
| 27 | jozach45 | Mrguzyou98z@hotmail.com | |
| 28 | mariahgofil | meizhen1231xie@hotmail.com | |
| 29 | matthew-pope | vhsqpnyjihs@gmail.com | |
| 30 | mylesdeb_67 | zhe933zhongmr@hotmail.com | |
| 31 | stetlerstef_13 | Wsheda88mi@hotmail.com | |
| 32 | macha_2268 | kuyuuuxixoaaljkjm@outlook.com | |
| 33 | nancyb9863 | Yanjpppjsdccx@outlook.com | |
| 34 | nichro-4155 | HuujKU858Jnkl@outlook.com | |
| 35 | niruydfwesr32 | niruydfwesrbnfryu6r4598@gmail.com | |
| 36 | warrencl71 | luuuRINGH@outlook.com | |
| 37 | jose.agu_44 | uwuaoo01j8jdqa@gmail.com | |
| 38 | meganb-62 | meganbrewis05@gmail.com | |
| 39 | otsra_50 | otsranthfl@gmail.com | |

Case No. 21-cv-60493-BLOOM/Valle

| Def. No. | Defendant / Seller ID | Financial Account Information / Store Number | Infringing Product Number |
|---|---|---|---|
| 40 | dolmccle61 | Earfusi@hotmail.com | |
| 41 | insic-76 | kokutagi413@gmail.com | |
| 42 | xuninini | 5b977a2f063ce14991a745ce | 5ed719e1916933c86052f0e4 |
| 43 | qiantec | qiantecc@gmail.com | |
| 44 | bratb4190 | brookeshelton1971@gmail.com | |
| 45 | Shop910563236 Store | 910563236 | 1005001464961451 |
| 46 | seedekez | algraouf7@gmail.com | |
| 47 | rearrange518 | peacesl@163.com | |
| 48 | vicselv0 | tjdslmx183@163.com | |
| 49 | pamur-8881 | tjdshb183@163.com | |
| 49 | brast_7625 | tjdshb183@163.com | |
| 50 | andkis65 | tjdsql193@163.com | |
| 51 | chrivang84 | a17104420713@163.com | |
| 52 | darobe440054 | daleroberson998@yahoo.com | |
| 53 | doupow-75 | tjdslh193@163.com | |
| 54 | incat-88 | incatechno@yahoo.com | |
| 55 | mcg_2100 | tjdsyjh173@163.com | |
| 56 | mdonal_1246 | mdonald19371@gmail.com | |
| 57 | micko-6335 | kohnm164@gmail.com | |
| 58 | phidan_3952 | dangelophilip990@yahoo.com | |
| 59 | ricfu_5842 | richardfuori@yahoo.com | |
| 60 | styl-7725 | jww8968@163.com | |
| 61 | wiibol_4 | Deluxedn@yahoo.com | |
| 62 | willong-9719 | tjdslsw321@163.com | |
| 63 | daga_8967 | LQ16520741546@163.com | |
| 64 | loxevery321 | LH16520744191@163.com | |
| 64 | hawhi_50 | LH16520744191@163.com | |